IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRYAN E. DENNEWITZ,**

      **Plaintiff,**

  v.

                                            **Civil Action 2:20-cv-4801**
                                            **Judge Sarah D. Morrison**
                                            **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Bryan E. Dennewitz, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. Pending before the Court is Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 22), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### I.    BACKGROUND

Plaintiff filed his application for benefits in September 2017, alleging that he has been disabled since April 25, 2017, due to scoliosis, back problems, problems from prior broken right foot, prior broken ribs, neck problems, left arm and leg problems, loss of feeling and strength in

1

the left leg and arm, high blood pressure, left testicle which fills up with fluid, eye problems-crossing and seeing double, breathing problems, vertigo problems, dizziness, hemorrhoid problems, bowel problems, spurs on the neck, testicle problems, memory problems, and urination problems. (R. at. 221-27, 244.) Plaintiff's application was denied initially in February 2018 and upon reconsideration in July 2018. (R. at 88-126.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 163-64.) On October 4, 2019, ALJ Noceeba Southern (the "ALJ") held a hearing at which Plaintiff, represented by counsel, appeared and testified. (R. at 32-63.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) ALJ Southern issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on October 25, 2019. (R. at 127-49). On November 7, 2019, Plaintiff filed a Request for Review of Hearing Decision Order. (R. at 218-20.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the Agency and his relevant hearing testimony:[1]

> [Plaintiff] endorsed difficulty with lifting, squatting, bending, standing, sitting, kneeling, and talking too long, reaching, walking, hearing, stair climbing, seeing up close, memory, concentration, understanding, using his hands, and getting along with others in an October 23, 2017 Function Report. According to him, his upper and lower back and neck were crooked, he had crushed disks and multiple nerves mashed. He endorsed extreme pain after doing as little as possible and stated he could not lift much without his back really hurting. Additionally, he indicated that pain from his neck, back, and headaches made him forget a lot and

---

[1] Because Plaintiff's allegations of error pertain only to his physical impairments and limitations, the Undersigned's discussion and analysis is limited to the same.

2

> that he had to write everything down so he did not forget.
>
> At the hearing, [Plaintiff] testified that the main issues that kept him from working were his right foot, which he had broken 25 years ago, his lower back where discs were degenerated and crushed, pressing against his spine and making his legs numb, and because he could hardly use his neck or lift anything. He also testified that he has had psychological problems ever since his mother died four years ago. He endorsed tingling in his neck and jabbing in his face, chest, and arms. He also testified that he was getting to a place where he could hardly use his left arm at all because it had gotten so weak. He also reported that he was dropping things with his right arm without knowing why he was dropping them. He also testified to experiencing an electrical shock going to his feet when he turned his neck. He also testified that he could not reach, and that he had to stick his arms out when he was in bed at night. [Plaintiff] also indicated that his doctors have recommended surgery for his neck, but he did not plan on going through with it because he did not have insurance and because his friends have not had good results when they had the surgery. [Plaintiff] also claimed his back and private parts went numb with sitting too long and his legs went numb with standing too long. Additionally, [Plaintiff] endorsed physical and mental exhaustion because his pain was preventing him from getting rest.

(R. at 137 (internal citations omitted).)

### III. RELEVANT MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's physical impairments:

> \*\*\* Treatment records document [Plaintiff's] history of musculoskeletal conditions, including degenerative disc disease of the lumbar and cervical spine, foraminal stenosis, lumbar spondylosis, and lumbar radiculopathy. He has complained of chronic low back and neck pain with radiation to the left upper extremity. \*\*\*
>
> The evidentiary record does document [Plaintiff's] longstanding low back pain and musculoskeletal discomfort. While there have been subjective findings on examination such as limitations of motion due to pain, or pain on palpation on occasion, there is no evidence of persistent neurological deficits or signs of nerve root compromise. Additionally, while straight leg raises have been positive on the left at times, straight leg raise testing has been negative bilaterally on several occasions. The undersigned also notes that after [Plaintiff] expressed interest in

applying for disability on May 22, 2017, Dr. Christian Bonasso informed him that there were certain jobs he could do that did not involve bending, lifting, and working over his head despite his C5-6 disk herniation, left upper extremity radiculopathy, and thoracic spondylosis. [Plaintiff] denied musculoskeletal stiffness or arthritis on June 6, 2018. Moreover, examination found no abnormalities or focal neurologic deficits. His lumbar radiculopathy pain was noted as stable on August 23, 2018. Examination on June 24, 2019 found tenderness in the cervical and upper thoracic spine bilaterally, his posture was normal, cervical extension was limited with pain and cervical extension was within normal limits with pain. Moreover, while [Plaintiff] endorsed worsening pain in his left arm and recent onset of right arm pain after a fall, strength in his upper extremities was normal bilaterally, with the exception of the left abductor pollicis muscle, which was 4/5. While there was some diminished sensation to light touch in the left upper extremity, it was in the non-dermatomal/on-peripheral nerve distribution. Spurling's test was negative and reflexes were normal, intact, and symmetric in the biceps, triceps, and brachioradialis bilaterally. [Plaintiff] denied musculoskeletal symptoms and examination was unremarkable on July 1, 2019.

The evidence also fails to show that [Plaintiff] has consistently exhibited most of the signs typically associated with chronic, severe pain, such as muscle atrophy, spasm, rigidity, or tremor; and [Plaintiff] has generally presented with a steady gait, and ambulated independently without any observable difficulty. Imaging studies have failed to reveal significant or severe pathology in the spinal canal. January 31, 2018 magnetic resonance imaging has demonstrated moderate degenerative disc disease at L5-S1; moderate-sized right paracentral disc protrusion at T11-T12 and T12-L1 resulting in effacement of the right portion of the conus medullaris; a small right paracentral disc protrusion at L1-L2; a small broad-based central disc protrusion at L4-L5; and a small central disc extrusion at L5-S1; and a severe left foraminal stenosis and mild right foraminal stenosis at L5-S1. August 21, 2018 radiography demonstrated normal lumbar spine alignment with stable multilevel thoracolumbar junction and mild lower lumbar degenerative changes. The "mild" diagnosis generally suggests that a condition is minor and generally does not support [Plaintiff's] allegations of debilitating pain or support any greater restrictions than those assessed herein. Further, [Plaintiff] has not needed the assistance of any ambulatory device, has not been prescribed a TENS unit or required a back brace. Further, clinical examinations have not identified signs of inflammatory disease, nor is there evidence of other signs that might be expected in the presence of a truly debilitating impairment such as bowel or bladder incontinence.

In terms of treatment, [Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual. Although [Plaintiff]

4

has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature, consisting of prescriptive medication, epidural steroid injections, and chiropractic manipulation. [Plaintiff's] use of medications does not suggest the presence of a musculoskeletal impairment(s), which is more limiting than found in this decision. [Plaintiff] testified that he did not take any pain medications for his back pain, other than over-the-counter Tylenol, Advil, and aspirin. If [Plaintiff] truly had the debilitating level of back pain as he alleges, it would be expected he would need to take some type of pain medication. Additionally, [Plaintiff] has declined to pursue surgical correction despite failure of lumbar epidural steroid injections, neuroleptics, NSAIDS, and analgesic medications and repeated recommendations by his doctors.

(R. at 137-39 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

On October 25, 2019, the ALJ issued her decision. (R. at 127-49.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. (R. at 132.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

has not engaged in substantially gainful activity since April 25, 2017, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of lumbar and cervical degenerative disc disease, foraminal stenosis, lumbar radiculopathy, anxiety, and depression. (R. at 133.) The ALJ determined that "all other impairments mentioned in the record, but not discussed within this decision, have been considered and are found to be non-severe, as they do not have even a minimal effect on Plaintiff's ability to perform competitive work on a regular and continuing basis." (R. at 134.) She further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can tolerate occasional ramps and stairs but should avoid ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; he should be able to tolerate changes that are well explained, any decisions or changes should be no more than occasional so as to provide for low stress; he should also perform best with a position where there is no fast pace work or strict production quotas; no more than occasional but super interaction with others, including the public, coworkers, and supervisors, superficial is that which is beyond the performance of job duties and job functions for a specific purpose and of short duration. Additionally[,] he would also perform best where there is a sit/stand option every hour for 2-3 minutes on task.

(R. at 136.) As for medical opinions, the ALJ found:

> State Agency reviewing medical consultant Dr. Elizabeth Das reviewed the record at the initial level on April 10, 2018 and concluded [Plaintiff] retained the capacity to lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk for a total of about 6 hours in an 8-hour workday; kneel without limitation; balance frequently; climb ramps and stairs, stoop, crouch, and crawl occasionally; and never climb ladders, ropes, or scaffolds. Reviewing medical consultant Dr. Lynne Torello reviewed the record at the reconsideration

6

> level on July 29, 2018 and affirmed the opinion of Dr. Das. The reviewing medical consultants based their findings on a review of the record and supported their opinion with citation to his physical examinations. The evidentiary record at the administrative hearing level is consistent with and supports a limitation to light work, and the undersigned finds the State Agency opinions persuasive to this extent. However, given the evidentiary record at the administrative hearing level and [Plaintiff's] testimony the undersigned finds persuasive, the undersigned finds [Plaintiff] is now limited to only occasional kneeling and frequent balancing.
>
> The undersigned finds the opinion of consulting physician Dr. Phillip Swedberg persuasive. Based on his clinical examination, Dr. Swedberg found [Plaintiff] appeared capable of performing at least a mild amount of ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. The doctor further found [Plaintiff] had no difficulty sitting. Additionally, he noted that while [Plaintiff] had difficulty reaching overhead with his left arm, he had no difficulty grasping and handling objects. Dr. Swedberg's opinion was based on a detailed physical consultative examination with [Plaintiff] and cited to his objective examination findings to support his conclusions. Moreover, the doctor's opinion is generally consistent with and supported by examinations of record and [Plaintiff's] routine, conservative treatment.

(R. at 140-141 (internal citations omitted).)

Relying on the VE's testimony, the ALJ found that Plaintiff is unable to perform his past relevant work as an insulation installer. (R. at 142.) Considering his age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, such as a cleaner, garment folder or small parts assembler. (R. at 142-43.) She therefore concluded that Plaintiff has not been disabled under the Social Security Act since April 25, 2017. (R. at 143.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth one assignment of error, arguing that the ALJ erred in analyzing Plaintiff's medically determinable severe impairments at step two, specifically regarding his

thoracic spine impairment, vision impairment, and right foot impairment. (ECF No. 17 at PAGEID ## 786-793.) Plaintiff notes that the ALJ found several severe and non-severe impairments at step two, but did not find Plaintiff's thoracic spine impairment, visual impairment, or right foot impairment to be either severe or non-severe, and Plaintiff argues that the ALJ "erred in failing to consider limitations and failing to state the basis for including no limitations related to these impairments in constructing the [RFC]." (*Id.*) Plaintiff argues that this constitutes reversible error, because "[i]t is reasonable to conclude that [Plaintiff] has/had limitations related to these impairments given their description in the record" and Plaintiff "has thus been harmed by the ALJ's failure to even consider these impairments at all in her decision." (*Id.* at PAGEID # 793.)

In response, the Commissioner argues that the ALJ "reasonably explained her step two severity determination, and considered the impact of all of Plaintiffs impairments throughout the decision, making any error at step two harmless." (ECF No. 22 at PAGEID # 804.) The Commissioner argues that the ALJ "considered all the impairments in the medical record, even though [the ALJ] did not explicitly name each one," and that "the ALJ continued to consider Plaintiff's foot pain, vision issues, and thoracic spine issues throughout his analysis of Plaintiff's RFC, rendering any error from finding the impairments non-severe at most harmless." (*Id.* at PAGEID ## 808-809.) Plaintiff did not file a Reply brief. Accordingly, the matter is ripe for judicial review.

As a preliminary matter, to the extent that Plaintiff argues the ALJ committed reversible error by failing to recognize Plaintiff's thoracic spine impairment, vision impairment, and right

9

foot impairment as medically determinable impairments at step two of the evaluation process, the Undersigned disagrees. As the Sixth Circuit and this Court have observed several times – and which Plaintiff affirmatively acknowledges in his Statement of Errors – step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) ("**Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless**. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]'") (emphasis added; internal quotations and citations omitted). Here, the ALJ found that Plaintiff had several impairments at step two of the evaluation process, and rightfully proceeded to the remaining steps of the disability determination. (R. at 133-134.)

That does not end the inquiry before the Court, however, because the ALJ must also consider both the severe *and non-severe* impairments in the remaining steps of the evaluation. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps.") (citing 20 C.F.R.

§ 404.1545(e)).  Upon review of the ALJ's decision, the Court finds that the ALJ expressly considered Plaintiff's thoracic spine impairment and right foot impairment throughout steps three and four of the disability determination, and properly stated the bases for not including any related limitations in the RFC:

- **R. at 137:** "At the hearing, Plaintiff testified that the main issues that kept him from working were his right foot, which he had broken 25 years ago, his lower back where discs were degenerated and crushed, pressing against his spine and making his legs numb, and because he could hardly use his neck or lift anything."

- **R. at 138:** "[Plaintiff] has generally presented with a steady gait, and ambulated independently without any observable difficulty."

- **R. at 138:** "The undersigned also notes that after [Plaintiff] expressed interest in applying for disability on May 22, 2017, Dr. Christian Bonasso informed him that there were certain jobs he could do that did not involve bending, lifting, and working over his head despite his C5-6 disk herniation, left upper extremity radiculopathy, and thoracic spondylosis. *** Examination on June 24, 2019 found tenderness in the cervical and upper thoracic spine bilaterally, his posture was normal, cervical extension was limited with pain and cervical extension was within normal limits with pain."

- **R. at 138-139:** "Imaging studies have failed to reveal significant or severe pathology in the spinal canal. [A] January 31, 2018 magnetic resonance imaging has demonstrated moderate degenerative disc disease at L5-S1; moderate-sized right paracentral disc protrusion at T11-T12 and T12-L1 resulting in effacement of the right portion of the conus medullaris; a small right paracentral disc protrusion at L1-L2; a small broad-based central disc protrusion at L4-L5; and a small central disc extrusion at L5-S1; and a severe left foraminal stenosis and mild right foraminal stenosis at L5-S1.  [An] August 21, 2018 radiography demonstrated normal lumbar spine alignment with stable multilevel thoracolumbar junction and mild lower lumbar degenerative changes. The "mild" diagnosis generally suggests that a condition is minor and generally does not support [Plaintiff's] allegations of debilitating pain or support any greater restrictions than those assessed herein. Further, [Plaintiff] has not needed the assistance of any ambulatory device, has not been prescribed a TENS unit or required a back brace. Further, clinical examinations have not identified signs of inflammatory disease, nor is there evidence of other signs that might be expected in the presence of a truly debilitating impairment such as bowel or bladder incontinence."

The ALJ also considered Plaintiff's treatment history, including as to these specific symptoms, and noted that it was inconsistent with his claims of disability:

> In terms of treatment, [Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual. Although [Plaintiff] has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature, consisting of prescriptive medication, epidural steroid injections, and chiropractic manipulation. [Plaintiff's] use of medications does not suggest the presence of a musculoskeletal impairment(s), which is more limiting than found in this decision. [Plaintiff] testified that he did not take any pain medications for his back pain, other than over-the-counter Tylenol, Advil, and aspirin. If [Plaintiff] truly had the debilitating level of back pain as he alleges, it would be expected he would need to take some type of pain medication. Additionally, [Plaintiff] has declined to pursue surgical correction despite failure of lumbar epidural steroid injections, neuroleptics, NSAIDS, and analgesic medications and repeated recommendations by his doctors.

(R. at 139 (internal citations omitted).)  The Court therefore finds that the ALJ properly stated the bases for not including any limitations in the RFC related to Plaintiff's alleged thoracic spine impairment and right foot impairment.  (*See* R. at 136-142.)

The same cannot be said, however, for Plaintiff's alleged vision impairment.  While the Undersigned agrees with the Commissioner that the ALJ "considered" Plaintiff's vision impairment at step two of the disability determination, there is no evidence that the ALJ considered Plaintiff's vision impairment beyond step two, which was in error.  *Martz v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-281, 2021 WL 916672, at *4 (S.D. Ohio Mar. 10, 2021) ("There is no evidence that Plaintiff's non-severe impairment was considered beyond Step Two. This was in error.") (citing *McQuown v. Comm'r of Soc. Sec.*, No. 3:18-CV-32, 2019 WL 2476803, *7 ("The ALJ's lack of meaningful consideration of carpal tunnel syndrome at steps three and four constitutes error under the Regulations."); Soc. Sec. R. 96-8p, 1996 WL 374184,

12

at *5 (Soc. Sec. Admin. July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'")).

      Here, the Commissioner argues (in a footnote) that "the ALJ stated that Plaintiff's non-severe impairments did not have even a minimal impact on his ability to perform work on a regular and continuing basis," suggesting that such a statement satisfied the ALJ's obligation to explain her reasoning for determining that Plaintiff's vision impairment warranted no limitation or even further discussion. (ECF No. 22 at PAGEID # 808-809 n.4.) The Undersigned disagrees, as the ALJ's comment was simply a restatement of what a non-severe impairment is, not an explanation of why additional limitations were unwarranted. *See Farris v. Secretary of H.H.S.,* 773 F.2d 85, 90 (6th Cir. 1985) ("[A]n impairment can be considered as non severe . . . only if the impairment is a 'slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience.'" (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)); SSR 85-28 (S.S.A. 1985) ("An impairment or combination of impairments is found 'not severe' . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)."); SSR 86-8 (S.S.A. 1986) ("An impairment is not severe if it is a slight abnormality or a combination of slight abnormalities which would

have no more than a minimal effect on the individual's physical or mental ability(ies) to perform basic work activities.").

Every non-severe impairment therefore does not have more than a "minimal impact" on a claimant's ability to work. The Social Security Regulations nevertheless require the ALJ to consider all non-severe impairments when determining a claimant's RFC, and to explain the basis for including (or not including) limitations arising from non-severe impairments. 20 C.F.R. § 404.1545(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). By failing to do so here, the ALJ committed reversible error. *See Meadows v. Comm'r of Soc. Sec.*, No. 1:07CV1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) ("The Court finds that the ALJ's failure to fully consider plaintiff's [non-severe] foot impairment in determining plaintiff's RFC is not harmless error and requires this case to be reversed and remanded for further development and clarification of plaintiff's [non-severe] foot impairment on her ability to work.").

The Commissioner appears to recognize the omission here, as the only evidence within the ALJ's decision to which the Commissioner points in support of its position is a passing reference to Dr. Swedberg's examination "which reflected that Plaintiff had 20/20 visual acuity without corrective lenses." (ECF No. 22 at PAGEID # 809.) This argument fails. First, the ALJ only noted that "Dr. Swedberg's opinion was based on a detailed physical consultative examination," not that Dr. Swedberg evaluated Plaintiff's alleged visual impairment. (*See* R. at

141.) Regardless, even if the Court was interested in considering this passing reference to a physical examination, Dr. Swedberg's note that Plaintiff has 20/20 visual acuity without corrective lenses (which the ALJ did not mention) is unrelated to Plaintiff's alleged visual impairment, which is "[eye] crossing and seeing double." (R. at 136-137 ("[Plaintiff] has alleged disability due to . . . eye problems-crossing and seeing double[.]").) Even taking the Commissioner's suggestion to its most favorable end, the Undersigned finds that Dr. Swedberg did not comment, let alone opine, on the subject vision impairment underlying Plaintiff's application for benefits. And even if he had, the ALJ did not discuss it.

To that end, the ALJ devoted approximately seven pages of her decision to explain the record evidence in support of her RFC finding. Nowhere in that analysis, however, does she refer to Plaintiff's alleged visual impairment. (*See* R. at 136-142.) The Commissioner argues *post hoc* that "[t]he evidence . . . is consistent with the ALJ's determination that Plaintiff's vision impairment was non-severe." The Undersigned rejects this argument as it ignores the ALJ's obligation to explain her reasoning for determining that Plaintiff's vision impairment warranted no limitation. *Six v. Comm'r of Soc. Sec.*, No. 2:18-CV-01639, 2020 WL 746595, at *8 (S.D. Ohio Feb. 14, 2020), *report and recommendation adopted*, No. 2:18-CV-1639, 2020 WL 996480 (S.D. Ohio Mar. 2, 2020) ("Again, insofar as the ALJ found no limitation arising from these impairments, he was required to so state and explain his reasoning.") (citing *McQuown*, 2019 WL 2476803, at *6). The Court cannot infer from a silent record that the ALJ considered Plaintiff's alleged visual impairment in rendering her RFC finding. *Id.* The Undersigned therefore finds that the ALJ's failure to fully consider Plaintiff's visual impairment in

15

determining Plaintiff's RFC is not harmless error and requires this case to be reversed and remanded for further development and clarification of the effect of these impairments on his ability to work. For these reasons, it is **RECOMMENDED** that Plaintiff's contention of error be **SUSTAINED**.

## VII. CONCLUSION

Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**DATED: November 2, 2021**         */s/ Elizabeth A. Preston Deavers*
                                    **ELIZABETH A. PRESTON DEAVERS**
                                    **UNITED STATES MAGISTRATE JUDGE**